Nathan E. PEARSON, Appellant,

v.

**HOPE LUMBER & SUPPLY COMPANY, INC.,**
Appellee.

No. 72017.

Supreme Court of Oklahoma.

Nov. 5, 1991.

Stipe, Gossett, Stipe, Harper, Estes, McCune & Parks by Anthony M. Laizure, Tulsa, for appellant.

Nichols, Wolfe, Stamper, Nally & Fallis, Inc. by Carl D. Hall, Jr., Tulsa, for appellee.

HODGES, Vice Chief Justice.

The plaintiff, Nathan E. Pearson (Pearson), brought this action against his former employer, Hope Lumber & Supply Company (Hope), for wrongful termination in violation of public policy and in violation of the implied covenant of good faith and fair dealing in his employment contract. Pearson filed a motion for partial summary

adjudication on the issue of liability. Subsequently, Hope filed a motion for summary judgment. The trial court denied Pearson's motion and granted Hope's. The Court of Appeals reversed the judgment of the trial court and remanded the case. There are two issues presented for our determination: (1) Whether the determination of public policy is a question for the jury or for the court; and (2) Whether Hope violated public policy when it terminated Pearson's employment.

The parties stipulated to the facts. Pearson worked for Hope at its Pryor facility. He did not have a written employment contract with Hope and could quit or be fired at anytime. During 1985, Hope believed it was experiencing inventory shortages at its Tulsa facility. As part of its investigation, Hope decided to require every employee to take a polygraph test and to sign a waiver or release of liability before administering the test. Signing the waiver and taking the polygraph test were conditions of continued employment. Pearson refused to sign the waiver and his employment was terminated on September 20, 1985, for violating Hope's policy that all employees sign the release and take the polygraph test.

On appeal, Pearson argues that his termination violated the public policy pronouncement incorporated in the Polygraph Examiners Act, Okla.Stat. tit. 59, §§ 1451–76 (1981) (Act). The Court of Appeals found that "an unresolved question of fact remain[ed] as to whether this release of liability [was] unnecessarily broad and could involve the relinquishment of certain legal rights contrary to public policy" and "that reasonable men in the exercise of their fair and impartial judgment might conclude that requiring Pearson to sign an all inclusive release of liability involved the relinquishment of legal rights or interest and was, therefore, against public policy."

■ The first issue is whether the determination of public policy is a question for the jury or for the court. The determination of public policy is generally a question of law. *See Hargrave v. Canadian Valley Elec. Coop.*, 792 P.2d 50, 59 (Okla.1990).

Questions of law are to be determined by the court, not the jury. Okla.Stat. tit. 12, § 556 (1981). After the court determines the public policy, it is then the jury's duty to examine the facts and decide if the public policy was violated. Therefore, the Court of Appeals erred when it remanded this case for a jury determination of public policy.

■ The second issue is whether Hope violated public policy when it terminated Pearson's employment. This Court recognized a tort action for wrongful discharge of an at-will employee under a public policy exception in *Hinson v. Cameron*, 742 P.2d 549 (Okla.1987). In *Burk v. K–Mart Corp.*, 770 P.2d 24 (Okla.1989), we held that the exception applied in a "narrow class of cases in which the discharge is contrary to a *clear mandate* of public policy as articulated by constitutional, statutory or decisional law." *Id.* at 28 (emphasis added). "The truth is that the theory of public policy embodies a doctrine of vague and variable quality, and unless deducible in the given circumstances from constitutional or statutory provisions, should be accepted as the basis of a judicial determination, if at all, only with the utmost circumspection." *Patton v. United*, 281 U.S. 276, 306, 50 S.Ct. 253, 261, 74 L.Ed. 854 (1930).

■ The question now is whether the Polygraph Examiners Act is a basis for an action in tort against an employer for an at-will employee's discharge. Pearson relies on section 1468(2) of the Act which provides:

The [Polygraph Examiners] Board may refuse to issue or may suspend or revoke a license on any one or more of the following grounds:

.     .     .     .     .

For failing to inform a subject to be examined that his participation in the examination is voluntary, unless the subject is an employee of a governmental body that has a policy or rules and regulations requiring mandatory polygraph examination as a part of internal investigations.

Hope argues that the Act does not contain the "clear mandate of public policy" on which to base a tort for wrongful discharge of an at-will employee under the public policy exception because the Act does not purport to touch any aspect of the employment relationship. We agree. The Act does not purport to limit the actions of an employer. Oklahoma, unlike some other states, *See* Annotation, *Validity and Construction of Statute Prohibiting Employers from Suggesting or Requiring Polygraph or Similar Tests as Condition of Employment or Continued Employment,* 23 A.L.R.4th 187 (1983), has not enacted legislation regarding the use of a polygraph as a condition of employment. The public policy against conditioning continued employment on participation in polygraph testing under the present facts is not deducible from the Act or any other legislation.

■ In 1988, congress enacted the Employee Polygraph Protection Act, 29 U.S.C. §§ 2001–09 (Supp.1988) (Federal Act). Section 2002 of the Federal Act makes it unlawful, except in limited situations, for an employer to "directly or indirectly, require, request, suggest, or cause any employee or prospective employee to take or submit to any lie detector test." Section 2005(c) provides that "[a]n employer who violates this [act] shall be liable to the employee or prospective employee affected by such violation." Pearson does not rely on the federal act nor has he shown that he falls under the protection of that act. This act cannot serve as a declaration of public policy necessary to support the present cause of action because it was not in effect at the time of the termination in the present case. Because the Federal Act was not in effect at the time this cause of action arose, we do not need to address whether it preempts a common-law action for wrongful discharge.

In conclusion, we find that Hope did not violate any public policy when it terminated Pearson's employment for refusing to sign the release and take a polygraph test. Therefore, the trial court correctly rendered summary judgment on the issue of liability in favor of Hope. We affirm the trial court.

CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS' OPINION VACATED; JUDGMENT OF THE DISTRICT COURT AFFIRMED.

LAVENDER, SIMMS, DOOLIN, HARGRAVE and SUMMERS, JJ., concur.

ALMA WILSON, J., concurs in result.

OPALA, C.J., and KAUGER, J., concur in part and dissent in part.