**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 17, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

ELIZABETH MARTIN; KELLY
FOLSOM,

      Plaintiffs - Appellants,

v.

WEYERHAEUSER COMPANY,

      Defendant - Appellee.

No. 07-7083
(E.D. Okla.)
(D.Ct. No. 6:06-cv-00188-KEW)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **KELLY**, **BALDOCK**, and **O'BRIEN**, Circuit Judges.

_____

Elizabeth Martin and Kelly Folsom, at-will employees, were discharged by the Weyerhaeuser Company. As self-described whistleblowers, they claim their discharge violated Oklahoma public policy. The district court dismissed their complaint on a motion for summary judgment. We affirm.[1]

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

## I.  BACKGROUND

In August 2001, Weyerhaeuser hired Martin and Folsom to work at its containerboard manufacturing facility in southeastern Oklahoma.  Martin was hired as a senior environmental engineer focusing primarily on water quality issues.  Folsom was hired as an environmental engineer focusing primarily on air quality issues.

Martin and Folsom were evaluated annually and received generally positive ratings, as well as raises and cash bonuses, until June 2004.  During a forced ranking process,[2] they received ratings placing them in the bottom of the bottom tier of salaried employees.  Martin and Folsom were placed on 45-day performance improvement plans which were extended for an additional 45 days.  Both were terminated following the expiration of the second 45-day term.

Martin and Folsom filed suit, alleging they were terminated in violation of Oklahoma's public policy exception to the employment-at-will doctrine.  They claimed they were terminated for "notifying management of . . . environmental concerns and for their repeated efforts to coax and then goad . . . management to take corrective . . . actions."  (Appellants' App. at 33-34.)  After limited discovery, Weyerhaeuser filed a motion for summary judgment arguing Martin and Folsom neither articulated an actionable public policy nor presented evidence

---

[2] The record does not indicate whether the June 2004 forced ranking was undertaken in anticipation of layoffs.

that they were discharged for either refusing to act in violation of, or performing an act consistent with, Oklahoma public policy. In opposition to Weyerhaeuser's motion, Martin and Folsom submitted affidavits supporting their theory of liability. Both claimed they raised serious environmental concerns with Weyerhaeuser on numerous occasions and the corrective action they recommended was not undertaken. Both "believe[d] that [they were] terminated in retaliation for performing the core functions of [their] positions." (*Id.* at 290, 300.)

The court granted Weyerhaeuser's motion for summary judgment.[3] Martin and Folsom filed a timely notice of appeal. We requested supplemental briefing on the issue of:

> Whether, viewing the facts in the light most favorable to plaintiffs, they have demonstrated a genuine issue of material fact in support of their claims that their employment was terminated as a result of either refusing to act in violation of public policy or performing an act consistent with public policy.

## II.  DISCUSSION

In *Burk v. K-Mart Corporation*, the Oklahoma Supreme Court "adopt[ed] . . . the public policy exception to the at-will termination rule in a narrow class of cases in which the discharge is contrary to a clear mandate of public policy as articulated by constitutional, statutory or decisional law." 770 P.2d 24, 28 (Okla.

---

[3] The parties consented to proceed before a magistrate judge. *See* 28 U.S.C. § 636(c)(1).

1989).  A *Burk* tort arises "where an employee is discharged for (1) refusing to violate an established and well-defined public policy or (2) performing some act consistent with a clear and compelling public policy."  *Darrow v. Integris Health, Inc.*, 176 P.3d 1204, 1210 (Okla. 2008).

Martin and Folsom contend they were discharged for refusing to violate an established and well-defined public policy, relying generally on Oklahoma's environmental statutes[4] and whistleblower protections as the basis for the alleged public policy.  The district court concluded neither the environmental statutes nor the whistleblower protections could form the basis of a *Burk* tort.  The court also held Martin and Folsom failed to show a genuine issue of material fact regarding the reason for their terminations.

"This court reviews an award of summary judgment *de novo*, viewing the record in the light most favorable to the non-moving party."  *Hammons v. Saffle*, 348 F.3d 1250, 1254 (10th Cir. 2003).  Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is

---

[4] Martin and Folsom rely on the Oklahoma Environmental Quality Act, Okla. Stat. tit. 27A, §§ 1-1-101—1-4-107; the Oklahoma Clean Air Act, Okla. Stat. tit. 27A, §§ 2-5-101—118; the Oklahoma Environmental Quality Code, Okla. Stat. tit. 27A, §§ 2-1-101—2-16-107; the Oklahoma Pollutant Discharge Elimination System Act, Okla. Stat. tit. 27A, §§ 2-6-201—206; the Oklahoma Water Supply Systems Act, Okla. Stat. tit. 27A, §§ 2-6-301—310.4; and the Environmental Crimes Act, Okla. Stat. tit. 21, §§ 1230.1—.10.

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 1776 (2007) (quotations omitted). "If there is no genuine issue of material fact in dispute, this court then determines if the substantive law was correctly applied by the district court." *Hammons*, 348 F.3d at 1254. Since this case is grounded on diversity jurisdiction, the substantive law of Oklahoma governs. *Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998). The district court's determination of Oklahoma law is entitled to no deference. *Id.*

## A. Legal Question

"[A]n employer's violation of a state-declared public policy is the fundamental predicate for a *Burk* tort." *Darrow*, 176 P.3d at 1210. Thus, we begin by considering whether the court correctly determined Martin and Folsom did not allege an actionable public policy. "The determination of a public policy exception is a question of law for the court to decide." *Wilburn v. Mid-South Health Dev., Inc.*, 343 F.3d 1274, 1277 (10th Cir. 2003); *see also Pearson v. Hope Lumber & Supple Co.*, 820 P.2d 443, 444 (Okla. 1991) (same). The Oklahoma Supreme Court has acknowledged "it is not always easy to identify what is a specific, well-established, clear and compelling public policy." *Darrow*, 176 P.3d at 1210. After the district court's decision, the Oklahoma Supreme

Court decided *Darrow*, which changed the *Burk* tort landscape, calling into question the cases relied upon by the district court.

### 1. *Oklahoma's Environmental Statutes*

According to the district court the environmental statutes relied upon by Martin and Folsom did not set forth an actionable public policy because they do not purport to affect the employment relationship. It cited *Pearson*[5] and *Shero v. Grand Sav. Bank*, 161 P.3d 298 (Okla. 2007),[6] for the proposition that "[t]he statute upon which an employee relies for the public policy exception to his at will status must [ ] explicitly state in its provisions an intent to affect the employment relationship." (Appellants' App. at 27.)

In *Darrow*, the Oklahoma Supreme Court rejected an argument that a *Burk* claim must fail under *Pearson* and *Shero* if "the sources of public policy relied on

---

[5] In *Pearson*, the court agreed with the defendant employer that the Polygraph Examiners Act, Okla. Stat. tit. 59, §§ 1451-76, did not contain a clear mandate of public policy because it did not "purport to touch any aspect of the employment relationship." 820 P.2d at 445.

[6] In *Shero*, the court held the Open Records Act, Okla. Stat. tit. 51, §§ 24A.1—.29, could not provide a public policy basis for a *Burk* tort. 161 P.3d at 301. Relying on *Pearson*, it explained:

> While the Open Records Act expressly sets forth the public policy concerning the people's right to know and be fully informed about their government, it is silent as to any public policy against conditioning continued employment on the abandonment of claims pursuant to the Act. It is the latter alleged public policy which must be deducible from the Act in order for the Employee to state a claim under . . . [*Burk*]

*Id.*

-6-

by [the plaintiff] contain no provisions limiting the actions of an employer." 176 P.3d at 1214, n.45. The court held *Pearson* and *Shero* were "not applicable" in *Darrow* "because we are dealing with matters of importance to the general public." *Id.* The issues in this case—the quality of Oklahoma's air and water—would seem to be matters of importance to the general public, no less than the issue of health care fraud and abuse in *Darrow*. We assume the Oklahoma environmental statutes cited by Martin and Folsom can support a *Burk* tort.[7] In any event, they are clearly not infirm because of their failure to touch the employment relationship.

### 2. *Oklahoma's Whistleblower Protections*

The district court also held Martin and Folsom could not rely on Oklahoma's whistleblower protections as a basis for their claims. It relied upon *Richmond v. ONEOK, Inc.*, where "[w]e reject[ed] [the plaintiff]'s claim that Oklahoma law provides an exception to at-will employment on the basis of her 'internal whistleblowing'" noting "[t]his court has already held that there is no clear mandate of Oklahoma public policy against terminating employees for

---

[7] The Oklahoma environmental statutes cited by Martin and Folsom may not present a clear mandate of public policy because they are too general. Martin and Folsom do not explain what specific statutory provisions Weyerhaeuser allegedly violated. This Court has rejected a *Burk* claim for a similar lack of specificity. *See Wilburn v. Mid-South Health Dev., Inc.*, 343 F.3d 1274, 1281 (10th Cir. 2003) (concluding plaintiffs waved any argument premised on the Residential Care Act in support of their *Burk* tort claim because "they do not specifically address a single substantive provision of the Act or identify a single regulation promulgated under the Act to advance their argument").

-7-

whistleblowing activity." 120 F.3d 205, 210 (10th Cir. 1997).

The Oklahoma Supreme Court has since clearly recognized that internal and external whistleblowing *can* provide a basis for a *Burk* claim. In *Darrow*, the Oklahoma Supreme Court held the plaintiff, who alleged he was wrongfully discharged for reporting record discrepancies and concerns about patient safety, stated a claim under *Burk*.[8] 176 P.3d at 1216. The court distinguished *Hayes v. Eateries, Inc.*, 905 P.2d 778, 785-86 (Okla. 1995), which held a restaurant employee could not maintain a *Burk* claim after being discharged for reporting a co-employee's embezzlement because he reported the embezzlement out of loyalty to his employer and concern for his employer's proprietary interest, not to vindicate his own interests or those of the general public. *Id.* at 1212-16. The *Darrow* court determined *Hayes* did not exclude all whistleblowing claims, but only those without public impact. *Id.* at 1214. It explained:

> Oklahoma law protects both **internal** and **external** reporting of whistleblowers who rely on an employer's public-policy violation to support an actionable employment termination . . . . Employees who report and complain of an employer's unlawful or unsafe practices and whose actions seek to further the public good by unmasking these breaches should be protected from an employer's retaliation.

*Id.* at 1215-16 (emphasis in original).

Based on *Darrow*, it appears Martin and Folsom stated a *Burk* tort claim

---

[8] Darrow based his claim on three federal statutes, several state statutes, and judicial decisions. 176 P.3d at 1209.

since they allege they were discharged for internal whistleblowing related to Weyerhaeuser's allegedly unlawful environmental practices.

B. Factual Question

Assuming Martin and Folsom stated a public policy basis for their claims does not end the analysis. The district court also concluded Martin and Folsom failed to allege facts sufficient to withstand summary judgment.[9] It said: "The general allegations espoused by Plaintiffs . . . simply represent Plaintiffs' personal speculation and opinion without an evidentiary basis . . . . Plaintiffs' ultimate conclusion[ ] that their terminations were based upon their performance of their job duties in reporting environmental matters is ethereal at best."[10] (Appellants' App. at 30.)

To succeed on a *Burk* tort claim, a plaintiff must allege he was discharged

---

[9] Weyerhaeuser contends Martin and Folsom waived any argument on factual sufficiency because they did not raise the issue in their opening brief. We conclude the argument has not been waived, as Martin and Folsom addressed the district court's factual findings to a limited degree in their opening brief and more thoroughly in their supplemental brief.

[10] Martin and Folsom contend the court erred in holding their claims lacked evidentiary support before ruling on their pending motion to compel. They assert: "It is simply unknown what additional relevant information the Employees could have presented in response to the [summary judgment motion] without the District Court even ruling on the Employee's [sic] timely filed and well supported motion to compel." (Appellants' Opening Br. at 45.) Martin and Folsom did not raise this argument with the district court. Thus, we will not consider it. *See McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 999 (10th Cir. 2002) ("[A]bsent extraordinary circumstances, we will not consider arguments raised for the first time on appeal.").

"in significant part for a reason that violates an Oklahoma public policy goal."

*Vasek v. Bd. of County Comm'rs of Noble County*, 186 P.3d 928, 932 (Okla. 2008). Upon careful review of the record, we conclude reasonable minds could not conclude Martin and Folsom's internal whistleblowing about alleged environmental wrongdoings, to the extent it can be characterized as such, was a significant factor in their discharge.[11] *See id.* at 934 ("If, from the evidentiary materials attached to the motion for summary judgment and the response, reasonable minds could reach differing conclusions as to whether Plaintiff's call to the [Department of Labor] was a 'significant factor' in her discharge, then the issue of retaliatory intent is a jury question.").

Martin and Folsom do not specifically allege Weyerhaeuser violated any environmental regulations; nor do they point to any evidence of retaliatory intent. The only evidence they cite to support their theory of retaliation are the negative rankings they received in June 2004, preceded generally by their voicing of various environmental concerns, which may or may not have violated the law, and which may or may not have been remedied. In *Barker*, the Oklahoma Supreme Court stated:

> Oklahoma does not recognize a *Burk* tort for public employees who complain about the way an organization is managed when the

---

[11] We struggle to see how Martin and Folsom's voicing of their concerns to management can be characterized as whistleblowing when they acknowledge it was part of their job description to raise such concerns.

> complaints merely exhibit differences of opinion or dissatisfaction with discretionary management decisions and the like. Something more is required such as reporting fraudulent activity or criminal misuse of funds.

40 P.3d at 469-70. Martin and Folsom have not shown they did anything more than express their dissatisfaction with Weyerhaeuser's environmental practices. Without specific evidence that Weyerhaeuser's conduct was fraudulent, criminal or illegal, their case fails under *Burk*. *See id.* at 471 ("[E]ven when viewing the summary judgment evidentiary materials in the light most favorable to [plaintiffs], we find they have failed to tie their expressions of concern to a specific, well established, clear and compelling Oklahoma public policy . . . .").

Though a party opposing summary judgment "need not offer conclusive proof," he "must proffer some probative evidence that would be sufficient to sustain [his] burden of persuasion at trial." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1116 (10th Cir. 2007). Martin and Folsom have failed to do so.

**AFFIRMED**.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge