2011 OK 15

**SENECA TELEPHONE COMPANY,**
**Plaintiff/Appellee,**

v.

**MIAMI TRIBE OF OKLAHOMA, d/b/a**
**White Loon Construction Company,**
**Defendant/Appellant.**

**Nos. 107,431, 107,432, 107,433, 107,434.**

Supreme Court of Oklahoma.

March 8, 2011.

Leonard M. Logan, Donna Louise Smith, Michael T. Torrone, Logan & Lowery L.L.L.P., Vinita, OK, for Plaintiff/Appellee.

O. Joseph Williams, Rachel T. Csar, Pitchlynn & Williams, P.L.L.C., Norman, OK, and Robin C. Lash, General Counsel, Miami Tribe of Oklahoma, Miami, OK, for Defendant/Appellant.

COMBS, J.

¶ 1 The Defendant/Appellant, Miami Tribe of Oklahoma (Tribe), d/b/a White Loon Construction Company, seeks review of the trial court's judgment and the Court of Civil Appeals opinion in favor of Plaintiff/Appellee, Seneca Telephone Company (Seneca), in Seneca's four consolidated small claims actions asserting tort claims arising from Tribe's repeated damage to Seneca's underground telephone lines during excavation on property owned in fee or in trust by the Eastern Shawnee Tribe of Oklahoma (Shawnees).

¶ 2 Seneca provides telephone service to a travel plaza, social services center, gaming casino, and housing subdivision owned by the Shawnees. The Shawnees hired Tribe to perform excavation work. In the course of performing the excavation work, Tribe cut Seneca's underground telephone lines on four separate occasions damaging the underground telephone cables. Seneca filed four separate small-claims suits and, over Tribe's sovereign immunity defense, recovered judgments totaling $13,648.93, with $600 in costs.

Subsequently, Seneca also recovered an attorney's fee of $34,655.09. This appeal followed.

## STANDARD OF REVIEW

¶ 3 A determination of jurisdiction is a question of law. The proper method to raise a question of jurisdiction is by a motion to dismiss. Questions of law are reviewed *de novo*, which involves a plenary, independent and non-deferential examination of the trial court's rulings of law. *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 996–97 (10th Cir.2001), held, with regard to sovereign immunity, it reviews *de novo* the "legal ruling on when a party can assert its sovereign immunity and the district court's determination of subject matter jurisdiction" See also, *Bittle v. Bahe*, 2008 OK 10, ¶ 14, 192 P.3d 810.

## ANALYSIS

¶ 4 The Court of Civil Appeals affirmed following the preemption analysis of *Rice v. Rehner*, 463 U.S. 713, 724–725, 103 S.Ct. 3291, 3298–3299, 77 L.Ed.2d 961 (1983). Preemption analysis balances the federal/tribal interests and the state interests within the specific context of the controversy to determine if state law is preempted by federal law. *Bittle v. Bahe*, 2008 OK 10, ¶ 16, 192 P.3d 810; *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980). Rice involved an application of the liquor laws of the State of California to a tribal store owner who was required to obtain a state liquor license in order to sell liquor for off-premises consumption. The United State Supreme Court reasoned that there was no tradition of tribal immunity in the area of alcoholic beverage control. The Court of Civil Appeals considered by extension that there was no tradition of tribal immunity in the area of telecommunications, and that Congress had authorized the states to regulate intrastate telecommunication facilities on tribal land. The Court found that Oklahoma enacted the Underground Facilities Damage Prevention Act (UFDPA) in accordance with Congress' authorization and that Tribe violated the UFD-

PA, 63 O.S. Supp.2003, Section 142.9a(B), by cutting Seneca's underground telephone lines. Therefore, it held Oklahoma district courts have jurisdiction over Tribe for violation of the UFDPA.

¶ 5 We must disagree. The United States Supreme Court in *Kiowa Tribe of Oklahoma v. Manufacturing Technologies,* 523 U.S. 751, 754, 118 S.Ct. 1700, 1702, 140 L.Ed.2d 981 (1998), held that "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." This immunity applies to the tribe's commercial as well as governmental activities. 523 U.S. 751, 754–755, 118 S.Ct. 1700, 1703; *Cook v. AVI Casino Enterprises, Inc.,* 548 F.3d 718, 725 (9th Cir.2008). Waiver for a federally-recognized tribe to be sued must be unequivocal. *C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.,* 532 U.S. 411, 418, 121 S.Ct. 1589, 1594, 149 L.Ed.2d 623 (2001). The United State Supreme Court further opined:

> In this economic context, immunity can harm those who are unaware that they are dealing with a tribe, who do not know of tribal immunity, or who have no choice in the matter, as in the case of tort victims.

*Kiowa Tribe of Oklahoma v. Manufacturing Technologies,* 523 U.S. 751, 758, 118 S.Ct. 1700, 1704, 140 L.Ed.2d 981 (1998). The Court in *Manufacturing Technologies* went further, stating that it would not limit tribal immunity to reservations or noncommercial activities and deferred this limiting role to Congress. *Id.* at 523 U.S. 751, 758, 118 S.Ct. 1700, 1705.

¶ 6 The present causes of action are for the alleged negligence of Tribe while performing work on the real property of the Shawnees, owned either in fee or in trust,[1] upon which Seneca had telephone lines. Until such time as the parties to a contract with a tribe, condition the performance of the contract upon an express waiver of sovereign immunity, the parties must act at their own peril when dealing with the tribe. Business enterprise must learn that the absence of a specific, clear waiver of the tribe's sovereign immunity may come at a very expensive cost. This case, however, does not pertain to a negotiated contract, but rather a negligence action filed by Seneca against a tribal enterprise.

¶ 7 In *Cook v. AVI Casino Enterprises, Inc.,* 548 F.3d 718, 726 (9th Cir.2008), a tort victim was involved in a traffic accident with an employee of a tribal corporation, acting within the scope their employment. The victim, Cook, asserted that tribal corporations who compete in the economic mainstream should not enjoy the same immunity from suit given to the tribes, themselves. Cook claimed it was unfair to allow tribes to create commercial corporations that can compete in the market place while enjoying immunity from the legal liability that all other corporations must face. The 9th Circuit Court, however followed their earlier decision in *Allen v. Gold Country Casino,* 464 F.3d 1044, 1046 (9th Cir.2006), in concluding that tribal corporations, acting as an arm of the tribe, enjoy the same sovereign immunity granted to a tribe itself. The record here supports that Defendant/Appellant is a wholly owned subsidiary of the Miami Tribe of Oklahoma, a federally recognized Indian tribe.

¶ 8 The harsh reality in the present case, is that Seneca did not have the opportunity to negotiate a waiver of the sovereign immunity with the negligent party, but was an innocent third party to the negligence of a tribal enterprise. This result leaves Seneca without a remedy against Tribe for their damages under our law, even when the assertions of negligence by the tribal enterprise are correct. (Subject of course to filing within the tribal court system of the Miami Tribe of Oklahoma).[2] Our jurisprudence should not lead an innocent plaintiff to a submission to tribal jurisdiction by default, simply by being victimized at the hands of one who may

---

1. This opinion consolidates the decision in four separate lawsuits. Title to the land in question is not in dispute.

2. Tort matters occurring on trust property could be filed in the Court of Indian Offenses as it is presumptively the appropriate forum for such matters. See 25 C.F.R. §§ 11.100, 11.102. Tort matters on non-trust "fee" lands against the Miami Tribe could be filed in the Miami Nation Court which was established in 2007.

brandish the shield of sovereign immunity.[3] It would be desirable if Congress were to pass legislation limiting the sovereign immunity of tribal entities or their employees in such situations. However, there is nothing to prohibit the tribe itself from taking responsibility for the actions of its employees, in the course of their employment, when an innocent plaintiff is injured or suffers damages by reason of the acts of their employee.

¶ 9 In the present matter the statute relied upon by the Oklahoma Court of Civil Appeals is 47 U.S.C. § 152 (2006), which provides:

(a) The provisions of this chapter shall apply to all interstate and foreign communication by wire or radio and all interstate and foreign transmission of energy by radio, which originates and/or is received within the United States, and to all persons engaged within the United States in such communication or such transmission of energy by radio, and to the licensing and regulating of all radio stations as hereinafter provided; but it shall not apply to persons engaged in wire or radio communication or transmission in the Canal Zone, or to wire or radio communication or transmission wholly within the Canal Zone. The provisions of this chapter shall apply with respect to cable service, to all persons engaged within the United States in providing such service, and to the facilities of cable operators which relate to such service, as provided in subchapter V–A.

(b) Except as provided in sections 223 through 227 of this title, inclusive, and section 332 of this title, and subject to the provisions of section 301 of this title and subchapter V–A of this chapter, *nothing in this chapter shall be construed to apply or to give the Commission jurisdiction with respect to (1) charges, classifications, practices, services, facilities, or regulations for or in connection with intrastate communication service by wire or radio of any carrier,* (*emphasis added*) or (2) any carrier engaged in interstate or foreign communication solely through physical connection with the facilities of another carrier not

directly or indirectly controlling or controlled by, or under direct or indirect common control with such carrier, or (3) any carrier engaged in interstate or foreign communication solely through connection by radio, or by wire and radio, with facilities, located in an adjoining State or in Canada or Mexico (where they adjoin the State in which the carrier is doing business), of another carrier not directly or indirectly controlling or controlled by, or under direct or indirect common control with such carrier, or (4) any carrier to which clause (2) or clause (3) of this subsection would be applicable except for furnishing interstate mobile radio communication service or radio communication service to mobile stations on land vehicles in Canada or Mexico; except that sections 201 to 205 of this title shall, except as otherwise provided therein, apply to carriers described in clauses (2), (3), and (4) of this subsection.

¶ 10 Reviewing this statute, it is apparent that the United States Congress has not authorized suit against the Tribe in this matter. There is no mention of Indian tribes in the statute and no express waiver of sovereign immunity in Indian Country. The Tribe has not waived its immunity. This is not like the fact patterns in *Rice v. Rehner,* 463 U.S. 713, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983), or *Bittle v. Bahe,* 2008 OK 10, 192 P.3d 810, where tribes are not allowed to regulate alcoholic beverages and must comply with the "laws of the State" under the federal statute. The instant case is exactly the type of suit envisioned by the United States Supreme Court where tort victims might be harmed by tribal immunity. *Kiowa Tribe of Oklahoma v. Manufacturing Technologies,* 523 U.S. 751, 758, 118 S.Ct. 1700, 1704, 140 L.Ed.2d 981 (1998). Businesses act at their own peril when dealing with tribes.

## CONCLUSION

¶ 11 In the present matter the Tribe was not engaged in any telecommunication activi-

---

**3.** Tort matters involving automobile accidents on State-owned highways involving tribal entities and non-Indians have been found to preclude sovereign immunity. *Dixon v. Picopa Construc-*

*tion Co.,* 160 Ariz. 251, 772 P.2d 1104 (Ariz. 1989); *Otterson v. House,* 544 N.W.2d 64 (Minn. Ct.App.1996).

ty. The Tribe was engaged in excavation work for another tribe on land held in fee as well as in trust by the United States Government. The United States Congress has not unequivocally waived sovereign immunity for the activities involved in the instant matter. The Tribe has not waived its sovereign immunity at any level in the present case and all issues herein presented are fully satisfied by our finding of immunity and, therefore, the opinion of the Court of Civil Appeals is vacated and the trial court is reversed and remanded with instructions to dismiss.

**CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS VACATED; TRIAL COURT REVERSED AND CAUSE REMANDED WITH INSTRUCTIONS TO DISMISS**

¶12 CONCUR: COLBERT, V.C.J., KAUGER, WINCHESTER, EDMONDSON, REIF, COMBS, GURICH, JJ.

¶13 DISSENT: TAYLOR, C.J., WATT, J.